Nash, J.
 

 The case, upon which this proceeding is founded, originated in the County Court of Wake. A writ issued, returnable to the Court, at the instance of Walter Otey against Hugh Rogers and N. T. Green,, and returned by the Sheriff of Wake “executed,” when in fact, and in truth, it never had been served on the defendant Green, who was an inhabitant of Warren county. The pleas were general, although the defendant Green did not appear to the suit, either personally or by counsel.' At, and before the trial, the counsel of the plaintiff knew that the writ had never been served on Green, and a motion had been made by the Sheriff and entered of record, for permission to amend his return. This amendment was never made, nor was there any action by the’ County Court on the Sheriff’s motion; and the Clerk very unaccountably, in carrying forward the case to the next docket, neglected to carry forward the Sheriff’s motion. According to the record of the County Court, as certified to us by the Clerk, the case was put to the jury against both defendants, a joint verdict rendered by the jury, and a- joint judgment by the Court. We learn from the affidavit of the Clerk himself, that, although the case was put to the jury against both defendants, and a joint verdict and a joint judgment rendered against both,- yet the record was, at that time, made up against Rogers alone,-leaving a blank space to be filled by the name of Green — that the first execution issued from his office Was against Rogers alone, and that he,- without consulting the Court, and without any authority from them,- when that writ was returned, inserted' the name of the defendant Green upon his record, and issued the execution
 
 *536
 
 both defendants. Three other witnesses testify that the case was put to the jury by the Clerk against Rogers alone. One. of these witnesses was the counsel of Rogers — a'n-agentleman,who had been spoken to to appear for Green, but for whom he had entered no appearance, and the other was the Sheriff of the county. The acting Clerk has given a transcript of the record, as it was originally made, from which it appears, so far as it speaks, that the verdict and judgment were against Rogers alone. And it further appears, that the record so made up was by the proper officer read over to the Court the next morning and duly approved. When the records of a Court are made up, no power, but that of the Court itself, can touch them to alter them. They are in the hands of the Clerk a sacred deposite, over which he. has no more power than any other individual, except to preserve them. It is manifest, if the Clerk is at liberty to alter them, in any particular, of his own accord, that they at once cease to imply that absolute verity, so necessary to all persons whatever. No man’s property would be safe, if records could be so altered! 4 Bl. c. 128. The Clerk, then, had no right to alter, as he did, however pure his motives may have been, ('and’we feel no disposition to say they were otherwise,) the records of the Court. He has however certified to us, the copy of the record of the suit, to which is appended his seal of office ; we have no power, in this proceeding, to look behind that seal, and from that record it appears, that the judgment is against both defendants, and only one of them has applied for and obtained the
 
 certiorari,
 
 under which the case is brought here. The original process was never served on the defendant Green, and there was no appearance for him, either in person or by attorney. It would violate one of the first principles of justice, secured to us by the 10th section of our Bill of Rights, that any man should be condemned, in his person or property, with-, out a hearing or an opportunity to be heard. The defendant Green might have-obtained redress by a motion to the County Court of Wake. We have no doubt, upon a proper applica
 
 *537
 
 tion to that Court, they would restore their records to their proper situation, by causing the additions made by the Clerk without their authority, to be stricken out. He has not chosen that course, but he has resorted to the writ of
 
 certio-rari
 
 as used and practised in this State .for .the purpose of obtaining a new trial.
 

 In
 
 Gidney v Halsey, 2
 
 Haw. 552, Judge Taylor, after-pointing out the difference between the writ of
 
 certiorari
 
 in England and in this State, observes, that this writ has grown up with the exigences of the State, and been moulded to suit the conveniences of its citizens. Its most frequent use •here is to supply the place of an appeal, when the applicant has been deprived of the right, by fraud or accident; and when allowed, and'by the order of the Superior Court, the case h as been transferred to the trial docket, its effect is precisely the same — the trial is,
 
 de novo. It
 
 must -therefore necessarily bring all the parties before the Gourt'; otherwise the trial cannot be had in the Superior, as it was had in the 'County Court. By many adjudications in our Courts, the doctrine is now firmly'established, that one party to a joint judgment cannot appeal, for the reason, that, in that case,-one part of the cause would remain in the County Court, while the other was in the Superior Court.
 
 Hicks
 
 v
 
 Gilliam, 4 Dev. 217. Dunn v Jones,
 
 4 Dev. & Bat. 154. It cannot be that the same thing may be done indirectly, which cannot be done directly. If one party'in a joint judgment cannot appeal, so neither can one party to a joint judgment, by
 
 certiorari
 
 take up a part of the case to the Superior Cout for a trial
 
 de novo.
 
 In this -case, thé defendant,Green is the only applicant for the
 
 certiorari,
 
 and it was ordered to be -issued -according to his prayer. The case ’of Rogers "then remains still in the County Court, although his name does appear as a party defendant in this and in the Superior Court of Wake. When the cause came on before the Superior Court of Wake upon the affidavits, on motion of the defendant Green, it was, by order of the presiding Judge, transferred to the- trial docket.
 

 
 *538
 
 We think this order was erroneous, and that the
 
 cerlio-vari
 
 ought to have been dismissed as having improvidentiy issued.
 

 Per Curiam. Judgment reversed.